GREEN WELLING LLP
Robert S. Green
595 Market Street, Suite 2750
San Francisco, CA 94105
Tel: (415) 477-6700
Fax: (415) 477-6710

-and-

SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP
Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA  19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Counsel for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| **IN RE CALPINE CORPORATION ERISA LITIGATION** | Master File No. C 03-CV-1685 (SBA) |
| | <u>**CLASS ACTION**</u> |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| | Date:  October 21, 2008<br>Time:  1:00 p.m.<br>Location:  Courtroom 3<br>Judge: Hon. Saundra B. Armstrong |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................2

    A.  The Settlement .................................................................................................2

    B.  The Notice Process and the Reaction of the Settlement Class..................................3

II.  HISTORY AND BACKGROUND OF THE ACTION ........................................................4

    A.  Description of the Action...................................................................................4

        1.  District Court Proceedings.........................................................................4

        2.  Appellate Proceedings ..............................................................................6

        3.  Bankruptcy Court Proceedings ...................................................................6

III.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
SETTLEMENTS.................................................................................................9

    A.  The Law Favors and Encourages Settlements .......................................................9

    B.  The Ninth Circuit's Standards Governing Class Action Settlements ....................10

IV.  THE SETTLEMENT IS FAIR REASONABLE AND ADEQUATE ............................11

    A.  The Amount Offered in Settlement....................................................................11

    B.  The Reaction of the Settlement Class Members to the Proposed Settlement ........12

    C.  The Strength of Named Plaintiff's Case Supports the Settlement........................13

    D.  The Risk, Expense, Complexity, and Likely Duration of the Litigation ...............14

    E.  The Extent of Discovery Completed and the Stage of the Proceedings ...............16

    F.  The Experience and Views of Counsel Supports the Settlement..........................17

    G.  The Risks of Maintaining the Class Action Through Trial Support the
Settlement .....................................................................................................18

    H.  The Absence of Fraud or Collusion Supports the Settlement...............................18

V.  CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER...............................19

    A.  The Proposed Class Meets the Prerequisites for Class Certification Under
Rule 23(a)......................................................................................................19

        1.  Numerosity...........................................................................................20

        2.  Commonality.........................................................................................20

3. Typicality ..................................................22

4. Adequacy ..................................................23

B. The Class May be Properly Certified under Rule 23(b)(1) and/or (b)(2) ..............24

1. Certification under Rule 23(b)(1) is Proper ..................................24

2. Subsection (b)(1)(B) ........................................25

3. Subsection (b)(1)(A) ........................................27

4. Alternatively, the Proposed Class Meets the Requirements of Rule 23(b)(2) ........................................28

C. Appointment of Class Counsel ..................................29

VI. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ............30

VII. CONCLUSION ..........................................................32

Table of Authorities

**Page(s)**

**FEDERAL CASES**

*Aguilar v. Melkonian Enterprises, Inc.*,
  No. 05-CV-00032, 2007 WL 201180 (E.D. Cal. Jan. 24, 2007) ...............................21, 26, 28

*Alvidres v. Countrywide Fin. Corp.*,
  No. 07-CV-5810, 2008 WL 1766927 (C.D. Cal. April 16, 2008) ....................................21, 27

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................................19

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ..........................................................................................22

*Babcock v. Computer Assocs. Int'l.*,
  212 F.R.D. 126 (E.D.N.Y. 2003) ....................................................................................24

*Bonime v. Doyle*,
  416 F. Supp. 1372 (S.D.N.Y. 1976), aff'd, 556 F.2d 555 (2d Cir. 1977)..............................12

*In re Broadwing Inc. ERISA Litig.*,
  No. 1:02-CV-00857, 2006 U.S. Dist. LEXIS 72609 (S.D. Ohio Oct. 5, 2006)......................13

*Bublitz v. E.I. du Pont de Nemours & Co.*,
  202 F.R.D. 251 (S.D. Iowa 2001) ....................................................................................29

*In re Catfish Antitrust Litig.*,
  826 F. Supp. 1019 (N.D. Miss. 1993) ...............................................................................29

*In re Centocor, Inc. Sec. Litig. III*,
  No. 98-CV-0260, 1999 U.S. Dist. LEXIS 1224 (E.D. Pa. Jan. 27, 1999) ............................22

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995).....................................................................................16

*Church v. Consolidated Freightways, Inc.*,
  No. 89-CV-7468, 1991 U.S. Dist. LEXIS 1549 (N.D. Cal. June 14, 1991) ...........................28

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .................................................................................9, 17, 31

*In re CMS Energy ERISA Litig.*,
  225 F.R.D. 539 (E.D. Mich. 2004) ..........................................................................19, 21, 22

*Colesberry v. Ruiz Food Products, Inc.*,
  No. 04-CV-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ....................................21, 26

*DiFelice v. U.S. Airways, Inc.*,
   436 F. Supp. 2d 756 (E.D. Va. 2006), affirmed, 497 F.3d 410 (4th Cir. 2007)......................14

*In re Electronic Data Sys. Corp, ERISA Litig.*,
   224 F.R.D. 613, 622 (E.D. Tex. 2004).................................................................................21

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   No. MDL 1446, 2006 WL 1662596 (S.D. Tex. June 7, 2006) .........................................23, 27

*Feret v. CoreStates Fin. Corp.*,
   No. 97-CV-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998) .............................................23

*Furstenau v. AT&T*,
   No. 02-CV-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004) ...............................28

*Gelb v. American Tel &. Tel. Co.*,
   150 F.R.D. 76 (S.D.N.Y. 1993) ...........................................................................................29

*General Tel. Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982)...........................................................................................................22

*In re Global Crossing Securities & ERISA Litig.*,
   225 F.R.D. 436 (S.D. N.Y. 2004) ........................................................................................12

*Gruby v. Brady*,
   838 F. Supp. 820 (S.D.N.Y. 1993).......................................................................................27

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .........................................................................9, 11, 19, 20

*Hanon v. Dataproducts Corp.*,
   976 F.2d 487 (9th Cir. 1992) ..............................................................................................22

*In re Heritage Bond Litig.*,
   No. 02-CV-382, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal June 10, 2005) .......................16, 31

*Hughes v. Microsoft, Corp*,
   No. 98-1646, 2001 U.S. Dist. LEXIS 5976 ..........................................................................12

*In re Ikon Office Solutions, Inc.*,
   191 F.R.D. 457 (E.D. Pa. 2000).............................................................................22, 25, 28

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   191 F.R.D. 457457 (E.D. Pa. 2000)....................................................................................22

*In re Immune Response Secs. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................................18

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992).................. 17

*Jordan v. County of Los Angeles*,
　　669 F.2d 1311 (9th Cir. 1982) ........................................................................................20

*Kane v. United Indep. Union Welfare Fund*,
　　No. 97-CV-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ...................................26

*Kayes v. Pacific Lumber Co.*,
　　51 F.3d 1449 (9th Cir. 1995) ........................................................................................19

*Keele v. Wexler*,
　　149 F.3d 589 (7th Cir. 1998) ........................................................................................21

*Kirkorian v. Borelli*,
　　695 F. Supp. 446 (N.D. Cal. 1988) ..............................................................................17

*Koch v. Dwyer*,
　　No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 22, 2001) .....................22, 27

*Kolar v. Rite Aid Corp.*,
　　No. 01-CV-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003)..................................27

*Landgraff v. Columbia Healthcare Corp.*,
　　No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000).....................15

*Langbecker v. Elec. Data Sys.Corp.*,
　　476 F.3d 299 (5th Cir. 2007) ........................................................................................18

*Lerwill v. Inflight Motion Pictures, Inc.*,
　　582 F.2d 507 (9th Cir. 1978) ........................................................................................23

*Linney v. Cellular Alaska P'ship*,
　　151 F.3d 1234 (9th Cir. 1998) .................................................................................11, 16

*Marisol v. Giuliani*,
　　126 F.3d 372 (2d Cir. 1997).........................................................................................22

*Mass. Mut. Life Ins. Co. v. Russell*,
　　473 U.S. 134 (1985)..........................................................................................19, 26, 29

*McDonnell-Douglas Corp. v. United States Dist. Ct.*,
　　523 F.2d 1083 (9th Cir. 1975) ......................................................................................25

*In re McKesson HBOC, Inc. ERISA Litig.*,
　　391 F. Supp. 2d 844 (N.D. Cal. 2005) ....................................................................28, 29

*In re Mego Fin. Corp. Sec. Litig.*,
　　213 F.3d 454 (9th Cir. 2000) ........................................................................................16

*In re Mfrs. Life Ins. Co. Premium Litig.*,
　　No. No. 96-CV-230, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998).....................13

*In re Milken & Assoc. Sec. Lit.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ............................................................................12

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................13, 14, 17

*Nelson v. IPALCO Enters., Inc.*,
    480 F. Supp. 2d 1061 (S.D. Ind. 2007) ..............................................................15

*Officers for Justice v. Civil Service Com.*,
    688 F.2d 615 (9th Cir. 1982) .......................................................9, 10, 11, 14

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................................10

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................10

*In re Polaroid ERISA Litig.*,
    240 F.R.D.65 (S.D.N.Y. 2006) .......................................................................25

*In re Qwest Sav.*,
    No 02-RB-464, 2004 U.S. Dist. LEXIS 24693 (D. Colo. Sept. 27, 2004) ...........22

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ...................................................... passim

*Ream v. Frey*,
    107 F.3d 147 (3d Cir. 1997).............................................................................20

*Risinger v. Concannon*,
    201 F.R.D. 16 (D. Me. 2001) ...........................................................................29

*Rogers v. Baxter*,
    No. 04-CV-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006)..............................27

*Santos v. Comancho*,
    No. 08-CV-0006, 2007 WL 81868 (D. Guam Jan 9, 2007)....................................30

*In re Schering-Plough Corp. ERISA Litig.*,
    420 F.3d 231 (3d Cir. 2005)..............................................................................22

*Smith v. AON Corp.*,
    238 F.R.D. 609 (N.D. Ill. 2006)........................................................................25

*Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*,
    140 F.R.D. 474 (S.D. Ga. 1991) ......................................................................26

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...........................................................................10

*Steinman v. Hicks*,
   352 F.3d 1101 (7th Cir. 2003) ........................................................................20

*In re Syncor ERISA Litig.*,
   227 F.R.D. 338 (C.D. Cal. 2005)....................................................20, 21, 26

*In re SYNCOR ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................13

*Thomas v. SmithKline Beecham Corp.*,
   201 F.R.D. 386 (E.D. Pa. 2001)......................................................................24

*Torrisi v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .........................................................................9, 14

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................9

*In re Warner Communications Sec. Litigation*,
   618 F. Supp. 735 (S.D.N.Y. 1985)...................................................................12

*In re Williams Cos. ERISA Litig.*,
   231 F.R.D. 416 (N.D. Okla. 2005)...................................................................25

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786 ........................................23, 27

**DOCKETED CASES**

*Lenette Poor-Herena v. Calpine Corp., et al.*,
   Case No. 03-CV-2316-SBA...............................................................................4

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

11 U.S.C.§ 105 ...................................................................................................7

11 U.S.C. § 362 ...................................................................................................7

Chapter 11 of the Bankruptcy Code.......................................................... passim

Employee Retirement Income Security Act of 1974 ("ERISA") .................................4

ERISA § 404(c) ........................................................................................... passim

Rule 23(e) of the Federal Rules of Civil Procedure.................................... passim

§ 409(a), 29 U.S.C. § 1109 ......................................................................... passim

§ 502(a)(2), 29 U.S.C. § 1132(a)(2)........................................................... passim

1  **OTHER AUTHORITIES**

2  3B MOORE'S FEDERAL PRACTICE ¶ 23.1.24[2] (2d ed. 1992).......................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 21, 2008 at 1:00 p.m., or as soon thereafter as counsel may be heard before the Honorable Judge Saundra B. Armstrong, United States District Court Judge for the Northern District of California, 1301 Clay St., Courtroom 3, 3rd Floor, Oakland, CA 94102, Plaintiff James Phelps, a participant in the Calpine Corporation Retirement Savings Plan, will and hereby does move for entry of an Order and Final Judgment.

This motion is based on (1) this Notice of Motion, Motion and Memorandum in support thereof, (2) the Declaration of Edward W. Ciolko in Support of the Motion for Final Approval of Settlement and Plan of Allocation and the Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Award ("Ciolko Declaration"), (3) the executed Settlement Agreement and all of its Exhibits, (4) the papers and pleadings on file, and (5) arguments of counsel at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff James Phelps ("Plaintiff"), a participant in the Calpine Corporation ("Calpine" or the "Company") Retirement Savings Plan (the "Plan"), respectfully submits this Memorandum of Law in Support of his Motion for an order approving the proposed settlement of the above-captioned action (the "Action"), approving the proposed Plan of Allocation and certifying the proposed Settlement Class for settlement purposes, all of which this Court preliminarily approved by its Findings and Order Preliminarily Certifying a Class for Settlement Purposes, Preliminarily Approving Proposed Class Action Settlement, Approving Form and Manner of Class Notice, and Setting Date for Hearing on Final Approval of Settlement and Award of Attorneys' Fees and Expenses and Case Contribution Compensation ("Preliminary Approval Order"), entered on July 17, 2008.

## I.    PRELIMINARY STATEMENT

### A.    The Settlement

In sum, the Settlement provides that the Defendants will pay $4,200,000 to the Plan to be allocated to participants pursuant to a Court approved plan of allocation. In exchange, the Named Plaintiff and the Plan will dismiss all claims in the Complaint, as set forth more fully in the Settlement Agreement. In addition, the Settlement will resolve certain bankruptcy litigation, described in more detail below. The Settlement Agreement also sets forth the proposed notice plan to class members and provides for the payment of attorneys' fees and named plaintiff compensation (both subject to Court approval).

As discussed below and in the Declaration of Edward W. Ciolko in Support of Motions for Final Approval of Settlement and Plan of Allocation and for Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Award ("Ciolko Declaration," filed contemporaneously herewith), when measured against the substantial benefit of the Settlement, the significant risk, time and expense in continued prosecution of this Action provide a more than adequate basis on which to find that the Settlement is fair, reasonable and adequate.

**B.     The Notice Process and the Reaction of the Settlement Class**

Pursuant to the Court's Preliminary Approval Order, the Notice of Class Action Settlement (the "Notice") was mailed to 2,622 potential Settlement Class Members or their nominees on or about August 21, 2008.[1]  In addition, a summary notice was published in *USA Today* on August 21, 2008.  A.B. Data Aff. ¶13.  Further, on our about August 21, 2008, a case-specific toll-free number was activated to provide information on the settlement and receive voicemail messages  (A.B. Data Aff. ¶¶10-11) and case-related documents were posted to CalpineERISASettlement.com.  A.B. Data Aff. ¶12.

The Notice contained a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement and Class member's rights, including without limitation: (i) description of the terms and effect of the Settlement and the Plan of Allocation; (ii) notification of the Settlement Class that Class Counsel will seek attorney's fees from the Settlement Fund not to exceed 33% of the Settlement Fund, reimbursement of expenses, and compensation up to $5,000 for the Named Plaintiffs; (iii) notification of the Settlement Class of the time and place of the Fairness Hearing; and (iv) description of how the recipients of the Class Notice may object to any of the relief requested.  *See* A.B. Data Aff., Exhibit 1.

Settlement Class Members had until October 7, 2008 to submit an objection to the Settlement, or any part thereof.  To date, *not a single objection* to the Settlement has been received.  Ciolko Declaration ¶53.  This absence of objections supports the Named Plaintiff's decision to resolve the Action in exchange for the payment of the Full Settlement Amount and evidences the inference that the Settlement Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.

---

[1]  *See* the Affidavit of Michelle M. A.B. Data, Esq. submitted herewith on behalf of A.B. Data, Ltd.'s Class Action Administration Division ("A.B. Data"), the Claims Administrator in this Action (the "A.B. Data Aff."), at ¶8.  The A.B. Data Affidavit is attached as Exhibit B to the Ciolko Declaration, and a copy of the Notice is attached as Exhibit 1 to the A.B. Data Affidavit.

## II.    HISTORY AND BACKGROUND OF THE ACTION

The following description is taken from Named Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Settlement; Conditional Certification of Settlement Class' Approval of Notice to Class Members; and Setting a Date for a Final Fairness Hearing ("Preliminary Approval Motion").

### A.    Description of the Action

#### 1.    District Court Proceedings

Named Plaintiff  filed a class action complaint against Defendants[2] on April 17, 2003, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 409, 502(a), 29 U.S.C. §§ 1109, 1132(a).[3]  Plaintiff alleged, *inter alia*, that Defendants and other Plan fiduciaries violated their statutory duties of prudence, care, and loyalty under Section 404(a) of ERISA, 29 U.S.C. § 1104(a) through their management, oversight and administration of the Plan's significant investment in Calpine stock during the Class Period, by, *inter alia*, (i) imprudently allowing the continued investment of Plan assets in Calpine stock; (ii) failing to appropriately monitor the committees and other Defendant-fiduciaries charged with managing and administering the Plan; (iii) providing incomplete and inaccurate information to Plan participants regarding the prudence of investing in Calpine stock during the relevant period; and (iv) certain Defendants failing to act solely in the interest of Plan participants.

---

[2]    Defendants are Calpine Corporation ("Calpine") and the following individuals: Rick Barraza, Bryan Bertacchi, Lisa Bodensteiner, Peter Cartwright, Ann B. Curtis, Kenneth T. Derr, Jeffrey Garten, Tom Glymph, Gerald Greenwald, Robert D. Kelly, Marybeth Kramer-Johnson, Robert McCaffrey, Kati Miller, Patrick Price, Susan C. Schwab, George J. Stathakis, Trevor Thor, and John O. Wilson (hereinafter "Individual Defendants").  Calpine and the Individual Defendants are hereinafter collectively referred to as "Defendants."

[3]    On May 19, 2003, Plaintiff Lenette Poor-Herena filed a class action complaint alleging substantial similar claims in the United States District Court for the Northern District of California in matter styled *Lenette Poor-Herena v. Calpine Corp., et al.*, Case No. 03-CV-2316-SBA.  On August 25, 2003, this Court entered a Stipulation and Order Consolidating these cases under the above referenced caption, and on January 20, 2004 Plaintiffs filed a Consolidated Class Action Complaint (hereinafter the "Complaint"). Plaintiff Lenette Poor-Herena subsequently withdrew as a Named Plaintiff in this litigation.  Accordingly for simplicity of reference herein, and consistent with the Settlement Agreement, this memorandum shall refer to Named Plaintiff in the singular.

Specifically, Named Plaintiff alleges that Defendants violated ERISA by, among other things: (1) allowing the Plan to imprudently invest in Calpine stock when they knew or should have known that the Company's value, financial and operational health, and future prospects were improperly inflated and unsustainable; (2) allowing the Plan to maintain and augment its investment in Calpine stock, despite their actual or constructive knowledge that its reported revenues, based on energy market manipulation and improper transactions with other energy providers undermined the propriety of investing Plan retirement assets in Calpine equity; (3) disseminating inaccurate and misleading material information to Plan participants regarding investment of Plan assets in Calpine stock and, additionally, withholding material information vital to making any such Plan investment decision; and (4) that Defendants, because of their positions as corporate insiders with a stake (monetary through Calpine equity ownership and personal through their position at the Company) had an interest in withholding information concerning Calpine's business and operational problems to portray Calpine as a growing and profitable company.

On August 13, 2004, Defendants filed separate, related motions to dismiss Named Plaintiff's Complaint, which the Court granted in part, with prejudice, on March 31, 2005, after full briefing and oral argument.  The Court granted Named Plaintiff permission to file an amended complaint containing only allegations that Defendants breached their fiduciary duty under ERISA by making affirmative misrepresentations/non-disclosures to Plan participants regarding the Company's business, prospects and financial health.  Named Plaintiff then filed an Amended Consolidated Complaint (hereinafter "ACC") on May 9, 2005.[4]  On June 3, 2005, Named Plaintiff filed a Motion for Leave to File a Motion for Reconsideration of the Court's Order dismissing the Complaint, which was denied on June 17, 2005.

On June 28, 2005 Defendants moved to dismiss Named Plaintiff's ACC, which the Court granted with prejudice on December 5, 2005.  On December 20, 2005 Calpine filed a petition under Chapter 11 of the U.S. Bankruptcy Code ("Bankruptcy Proceeding") in the United States Bankruptcy

---

[4] On June 15, 2005, Named Plaintiff filed a "Corrected" Amended Complaint which included exhibits that were inadvertently omitted from the Amended Consolidated Complaint.

1   Court for the Southern District of New York ("Bankruptcy Court"), thereby necessitating Class

2   Counsel's participation in the Bankruptcy Proceeding to protect the interests of Named Plaintiff, the

3   putative Class and the Plan.

**2.      Appellate Proceedings**

5          On January 3, 2006, Named Plaintiff filed a timely Notice of Appeal to the Ninth Circuit

6   Court of Appeals (hereinafter "Court of Appeals").   On January 6, 2006, Calpine filed a notice of

7   suggestion of bankruptcy with the Court of Appeals.   On February 28, 2006, the Court of Appeals

8   entered an order staying proceedings as to Calpine, and extending the stay *sua sponte* to the non-

9   debtor Individual Defendants.  *See* Docket, No. 15.  Named Plaintiff requested reconsideration of the

10  order extending the stay to the Individual Defendants, and on June 23, 2006 the Court of Appeals

11  vacated the stay as to the non-debtor Individual Defendants.  *See* Docket, No. 24.  On July 10, 2006

12  the Court of Appeals lifted the stay as to Calpine pursuant to the Bankruptcy Court's June 26, 2006

13  Stipulation and Order Settling Adversary Proceeding as Against James Phelps, Individually and as

14  Representative of the ERISA Plaintiffs. *See* Docket No. 28.

15         On November 7, 2006 Named Plaintiff filed his opening appellate brief.  *See* Docket No. 41.

16  On November 22, 2006, the remainder of the briefing schedule was vacated, and the matter was

17  referred to the Court of Appeals' Mediation Program. *See* Docket No. 45.  As detailed below, the

18  parties participated in private mediation (their second) before the Hon. Nicholas Politan, which, after

19  strenuous negotiations, ultimately resulted in the proposed Settlement.

**3.      Bankruptcy Court Proceedings**

21         As stated above, on December 20, 2005, Calpine and certain affiliated entities (collectively

22  the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code

23  (collectively, the "Chapter 11 Cases").  The Chapter 11 Cases were consolidated for administrative

24  purposes only under Case No. 05-60200 (BRL).

25         The Debtors' Chapter 11 Cases significantly increased and complicated the responsibilities

26  and obligations of Named Plaintiff's Lead Counsel in protecting the interests of the Class.

27  Accordingly, in February, 2006 Lead Counsel for Named Plaintiff retained Cole, Schotz, Meisel,

28

1 Forman & Leonard, P.A. ("Cole Schotz" or "Bankruptcy Counsel) as special bankruptcy counsel to

2 the Class.

3      The Calpine Chapter 11 cases were large and complex, involving numerous parties and a

4 myriad of issues which required the devotion of significant time and attention by Lead Counsel and

5 Bankruptcy Counsel to protect the interests of the Class.  Given the broad powers of the Bankruptcy

6 Court and the fast moving pace of the Chapter 11 Cases as evidenced by the almost constant flow of

7 pleadings filed therein, Bankruptcy Counsel was required to closely monitor the Chapter 11 cases to

8 be certain that actions taken therein would not adversely affect the rights of the Named Plaintiff and

9 the Class.  Lead Counsel and Bankruptcy Counsel reviewed and addressed, often under expedited

10 circumstances, many matters in the Chapter 11 Cases, with the more notable of such matters

11 including:  (a) defending against the Debtors' aggressive efforts to enjoin the continuation of the

12 Class Action as against the non-Debtor Individual Defendants; (b) preparing and filing a class proof

13 of claim; (c) preparing a stand-by motion and supporting memorandum for class certification;

14 (d) participating in the Bankruptcy Court's approval process for the Debtors' Chapter 11

15 Reorganization Plan by scrutinizing the Debtors' disclosure statement and challenging efforts by the

16 Debtors to provide for releases and injunctions on behalf of third parties, including the Individual

17 Defendants in the Class Action; and, (e) engaging in extensive negotiations to harmonize the

18 proposed Settlement with the provisions of the proposed Chapter 11 Reorganization Plan.

19      Indeed, Lead and Bankruptcy Counsel actively participated in the Bankruptcy Proceeding

20 from its inception.  Less than 60 days after filing the Chapter 11 Cases, the Debtors filed a

21 complaint, with related motions, seeking a declaration of the Bankruptcy Court extending the

22 automatic stay under 11 U.S.C. § 362 to Named Plaintiff's ERISA claims against the Individual

23 Defendants, or in the alternative, an injunction for such purpose pursuant to 11 U.S.C.§ 105 ("Debtor

24 Injunction Action").  After many months of litigation and settlement negotiations, and only on the

25 eve of the hearing before the Bankruptcy Court, Bankruptcy Counsel and Named Plaintiff's Lead

26 Counsel reached agreement with the Debtors on the terms of a stipulation that was ultimately

27

28

approved by the Bankruptcy Court,[5] and that enabled Class Counsel to pursue Named Plaintiff's appeal to the Ninth Circuit, as against Calpine and the Individual Defendants.  Named Plaintiff believes this agreement was vital in bringing the parties ultimately to the settlement table.

Furthermore, pursuant to an order of the Bankruptcy Court setting a deadline for all creditors to file, or forever waive, claims against Debtors, Bankruptcy Counsel prepared and timely filed a proof of claim on behalf of the Class.  Recognizing the uncertain state of the law regarding whether a class action proof of claim requires certification of the class by the Bankruptcy Court in order for a class claim to be effective, Lead and Bankruptcy Counsel prepared the pleadings necessary to move for class certification in the Bankruptcy Court.  Ultimately, the parties' Settlement Agreement mooted the need to move for class certification in the Bankruptcy Court.

In June of 2007, the Debtors filed their initial proposed Chapter 11 plan of reorganization (the "Reorganization Plan"), a disclosure statement, and Reorganization Plan supplement in connection therewith, which collectively consisted of hundreds of pages of complicated and detailed information.  Because a court-approved Chapter 11 plan of reorganization effectively operates as a contract between the Debtors and its creditors and can potentially affect the substantive rights of creditors and third parties, Bankruptcy Counsel (with Lead Counsel) were required to meticulously scrutinize the Reorganization Plan to determine whether any of its provisions would adversely affect the substantive rights of Named Plaintiff, the Plan, and the proposed class, not only with respect to his claims on behalf of the Plan against the Debtors, but also with regard to any potential claims against third parties.  In this endeavor, Bankruptcy and Lead Counsel's time was well spent, as they determined that the Reorganization Plan sought to provide an overly broad release and injunction of claims, not only against the Debtors, but also to the benefit of the Individual Defendants in the Class Action.

---

[5] Pursuant to the Debtor Injunction Action, the Debtors had also sought to enjoin other class actions that had been commenced against the Debtors and certain Individual Defendants, and ultimately, the Bankruptcy Court did enter an order enjoining the continuation of those actions.

The Reorganization Plan approval process lasted approximately six months, with the Debtor filing five amendments to the initial proposed Reorganization Plan.  The Bankruptcy Court confirmed the Debtors' "Sixth Amended Plan", as further modified, in late December, 2007.  Lead and Bankruptcy Counsel actively participated in all stages of the approval process to protect the Settlement Class's interests by, among other things, preparing and filing objections to the Debtors' proposed disclosure statements and the confirmation of the proposed Chapter 11 Reorganization Plan. Lead and Bankruptcy Counsel stridently negotiated with the Debtors to resolve those objections.  These efforts were further complicated by the parallel discussion then being pursued with respect to the settlement of Named Plaintiff's class claims on behalf of the Plan to ensure that the Reorganization Plan and proposed Settlement did not conflict with one another.  This required extensive communication and negotiations among and between Bankruptcy Counsel, Named Plaintiff's Lead Counsel and the attorneys representing the Debtors, and the Individual Defendants, to be certain that hard-fought benefits and protections secured in any proposed term sheet or Settlement Agreement would not be adversely affected by the provisions of the proposed Reorganization Plan.  Ultimately, but only after extensive negotiation, Lead and Bankruptcy Counsel were successful in their efforts.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

The settlement of complex class action litigation is clearly favored by the courts.  *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the Court of Appeals for the Ninth Circuit has directed that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the

1  parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

2  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

3  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

4  *Officers*, 688 F.2d at 625.  Moreover, courts have found a strong initial presumption of fairness

5  attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's-

6  length negotiations.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)

7  ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial

8  presumption of fairness attaches to the proposed settlement.").  *See also* MANUAL FOR COMPLEX

9  LITIGATION § 30.43 at 289 (3d ed. 2002); Newberg & Conte, NEWBERG ON CLASS ACTIONS, 11.42

10 (3d ed. 1992); 3B MOORE'S FEDERAL PRACTICE ¶23.1.24[2] (2d ed. 1992).

11      This initial presumption of fairness applies here because a substantial settlement was reached

12 by experienced, fully-informed counsel after many years of litigation, including in bankruptcy and

13 appellate proceedings, after conducting significant investigation, and following hard-fought

14 negotiations -- including a formal mediation presided over by a seasoned mediator.  Class Counsel

15 were fully informed of the merits and weaknesses of the Action when the Settlement was reached,

16 and thus, little doubt exists that this Settlement is entitled to a presumption of fairness.

17      **B.      The Ninth Circuit's Standards Governing Class Action Settlements**

18      The standard for reviewing the proposed settlement of a class action in the Ninth Circuit, as

19 in other circuits, is whether the proposed settlement is "fair, reasonable and adequate."  *Staton v.*

20 *Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 377

21 (9th Cir. 1995) (citation omitted); *Officers*, 688 F.2d at 625.  To that end, the Ninth Circuit has

22 identified eight factors to consider in deciding whether to approve a proposed settlement of a class

23 action:

> (1) the amount offered in settlement; (2) the reaction of the class members to the proposed settlement; (3) the strength of plaintiffs' case; (4) the risk, expense, complexity, and likely duration of further litigation; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel;

(7) the risk of maintaining class action status throughout the trial; and (8) the absence of collusion.[6]

*See Officers*, 688 F.2d at 625 (the importance of any one factor "depend[s] upon…the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case").  As demonstrated below, an analysis of each of the foregoing factors supports a finding that the Settlement is fair, reasonable and adequate.

## IV.   THE SETTLEMENT IS FAIR REASONABLE AND ADEQUATE

### A.   The Amount Offered in Settlement

This Settlement represents an excellent recovery for the Settlement Class, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes." *Officers*, 688 F.2d at 624 (citation omitted); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . " *Officers*, 688 F.2d at 624 (citation omitted).  *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (a settlement is not to be judged against a speculative measure of what might have been achieved).

Here, the Settlement Class will receive $4.2 million in cash in exchange for the release of its claims against Defendants.  In light of the significant risks presented by the possibility of proceeding with this litigation against a bankrupt company (described in more detail below), this settlement represents a significant recovery for the Plan.  Further, when settled, this action was dismissed from the District Court and an appeal was pending before the Ninth Circuit Court of Appeals.

In addition, assuming the parties were eventually returned to a litigation stance, Named Plaintiff's damages will be difficult to prove.  In general, the calculation of "ERISA" damages is

---

[6]  The Ninth Circuit also listed the "presence of a governmental participant" as a factor for consideration; however, there was not a governmental participant here. *Officers*, 688 F.2d at 625.

"complex, time-consuming and expensive," *see, e.g., In re Global Crossing Securities & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D. N.Y. 2004) ("*Global Crossing*"). Moreover, preparations for trial would entail a great amount of time, effort and expense. Calculation of damages would have to be brought through full discovery process and adjudication where the judge, as trier of fact, can set the relevant time period when the relevant investment was to be considered "imprudent" for the plan at issue (a factually intensive question in and of itself). *See Donovan*, 754 F.2d at 1057. Damages calculations in ERISA cases like this are, in practice, computer- and expert-intensive. The proof invariably requires a sophisticated computer model of the plans involved, usually tracking the assets held by the plan and its participants, purchases and sales of the individual accounts of participants as well as any relevant assets held, purchased and/or sold by the plan but not allocated to its participants. These calculations must be repeatedly performed to calculate damages suffered by each participant's account as well as the plan as a whole. An expert must create the model, test it, and effectively explain it. This sort of complexity, or the possibilities of glitches in the model, can have unexpected results. Thus, this type of complexity favors early resolution. *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *In re Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations is often a "battle of the expert, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), aff'd, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).

In light of the circumstances of this Action, the settlement amount is appropriate.

**B.     The Reaction of the Settlement Class Members to the Proposed Settlement**

The reaction of the Settlement Class to the Settlement is a significant factor in assessing its fairness and adequacy. *See Hughes v. Microsoft, Corp*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976, at *24 )W.D. Wash. Mar. 21, 2001) (finding 9 objections and exclusions by only 1% of class indicated class approval and supported settlement). Indeed, "it is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the

terms of a proposed class settlement are favorable to the class members." *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Here, 2,622 copies of the Notice have been mailed to potential Settlement Class Members. The deadline for objecting to the Settlement -- October 7, 2008 -- has now passed, and, as of the filing of this Memorandum, *not one* recipient of the Notice has objected to the Settlement. Ciolko Declaration ¶53. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. No. 96-CV-230, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998) at *24 (S.D. Cal. 1998) ("[A] minuscule number of objectors is another factor favoring approval."); *In re Broadwing Inc. ERISA Litig.*, No. 1:02-CV-00857, 2006 U.S. Dist. LEXIS 72609, at *21 (S.D. Ohio Oct. 5, 2006) ("The small number of objectors is a good indication of the fairness of the settlement.") (citations omitted). This total lack of dissent strongly supports the Court's final approval of the Settlement.

## C.    The Strength of Named Plaintiff's Case Supports the Settlement

The strength of the Named Plaintiff's case also supports the Court's approval of the Settlement. As an initial matter, although the Named Plaintiff's action was dismissed by the District Court and an appeal was pending when the Settlement was reached, Lead Counsel for Named Plaintiff believes strongly that the Ninth Circuit would have reversed and remanded the Action, based on recent Ninth Circuit ERISA case law, including the decision in *In re SYNCOR ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008). Named Plaintiff contends that his case was strong on the merits and would have ultimately (although likely after the passage of several more years) been successful.  Named Plaintiff believes that under recent case law he would be likely to prove that Calpine, which declared bankruptcy, was an imprudent investment for Plan assets.

At the same time, however, Named Plaintiff recognizes that continued litigation presents significant risks for an adverse outcome. The law in this area is still evolving, making it difficult to predict outcomes with any certainty. Even if Named Plaintiff were eventually able to obtain a remand from  the Ninth Circuit, he recognizes the risk that the District Court, upon review of all evidence presented in a summary judgment motion or at a trial, could still rule for Defendants. Like many cases, this case presents a risk to the Defendants that Named Plaintiff would prevail at trial,

resulting in an adverse judgment.  This case also presents a risk to Named Plaintiff that trial would result in a defense verdict.  The "strength of the case" factor supports approval of the proposed settlement.

### D.       The Risk, Expense, Complexity, and Likely Duration of the Litigation

Courts have consistently recognized that the risk, expense, complexity, and possible duration of the litigation are critical factors in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1376 (". . .[T]he cost, complexity and time of fully litigating the case all suggest that this settlement was fair."); *Officers*, 688 F.2d at 626 (expense and possible duration of litigation are major factors to consider in evaluating reasonableness of settlement).  In fact, "in most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telcoms. Coopv. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (finding that even though proposed settlement reached on eve of trial, this factor supported approval because trial would be lengthy, involve significant number of lay witnesses and experts, present complex issues, and appeal would have followed) (citations omitted).

As described above, Named Plaintiff faced substantial risks in establishing liability, causation and damages.  In addition to the risks involved with the appeal, Named Plaintiff also faced the risks inherent in taking a case to trial, *i.e.* that it is impossible to predict how a Court will construe the conflicting evidence and testimony presented by the Parties, especially in this Action, where the evidence that would be presented complex fiduciary matters, and where the District Court previously dismissed the Named Plaintiff's claims as a matter of law.  Further, but for the Settlement, Named Plaintiff would have continued on to expensive formal discovery, likely encountering the additional complexities associated with obtaining voluminous document discovery as well as deposition discovery and costly expert discovery.

Even if Named Plaintiff prevailed in his appeal and his case were remanded to the District Court, there was nothing guaranteeing their success in litigating the case on its merits.  While there are numerous decisions addressing Rule 12 and Rule 56 motions in this type of action, to date only three ERISA breach of fiduciary duty class actions have gone to trial – each case resulted in a defense verdict. *See DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), affirmed,

497 F.3d 410 (4th Cir. 2007) ("*DiFelice*") (Fourth Circuit affirmed the district court's ruling that defendants did not breach ERISA mandated fiduciary duties by continuing to offer company stock as plan investment option.); *Nelson v. IPALCO Enters., Inc.*, 480 F. Supp. 2d 1061 (S.D. Ind. 2007) ("*Nelson*") (court determined Defendant fiduciaries did not breach their fiduciary duties under ERISA by failing to remove company stock as a plan investment option); *Landgraff v. Columbia Healthcare Corp.*, No. 98-CV-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000) (same). Thus, the risks associated with continuing to trial were very real.

While Class Counsel are confident in their ability to establish liability and distinguish this matter from *DiFelice* and *Nelson*, they recognize numerous additional risks posed by continued litigation. For example, Named Plaintiff may lose his appeal; The Court could dismiss the Action even after a successful appeal; the Court could deny Named Plaintiff's motion for class certification; Defendants, after lengthy and expensive discovery, could prevail on summary judgment; or Named Plaintiff could ultimately lose at trial or obtain a judgment below the proposed $4.2 million settlement. Moreover, even if Named Plaintiff were successful in avoiding each of these obstacles, lengthy appeals were sure to follow any judgment at the District Court level. An analysis of potential risks for the Class clearly weighs in favor of settlement approval.

The expense and delay of further litigation also counsel in favor of the Settlement. Although Named Plaintiff completed a substantial investigation, extensive document discovery and depositions had not yet begun. Moreover, given the complexity of the issues involved, Named Plaintiff anticipated conducting voluminous document discovery and taking numerous depositions. Expert discovery would have been both time-consuming and costly, as the issues involved would have required each side to obtain specialized experts in foreign tax and labor laws, in addition to accounting and damages experts. In an Action of this complexity, the costs associated with discovery alone - not to mention summary judgment, preparation for trial, a trial and the inevitable post-trial appeals - would be very high. If the Action had continued, these expenses would have also been borne by Defendants, serving to diminish the insurance proceeds available to fund a settlement or satisfy a judgment in this Action. Moreover, one can easily conclude that this Action, if taken to trial, would require an additional one to two years to conclude, necessitating many hours of the

Court's time and resources. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity, the end of that road might be miles and years away."). As a result, years would pass before the Settlement Class would receive a recovery, if any. Ciolko Declaration ¶63. *In re Heritage Bond Litig.*, No. 02-CV-382, 2005 U.S. Dist. LEXIS 13555 at *28 (C.D. Cal June 10, 2005) ("much of the value of a settlement lies in the ability to make funds available promptly") (citation omitted).

Thus, although Named Plaintiff stands by the validity of his claims, he recognizes that he faced significant obstacles to the recovery.

**E.    The Extent of Discovery Completed and the Stage of the Proceedings**

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture." Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.45 (3d ed. 1992). As the Ninth Circuit has stated"'[i]n the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*, 151 F.3d at 1239).

Here, without question, Class Counsel were knowledgeable of the strengths and weaknesses of the Class's claims. Class Counsel obtained this knowledge through drafting detailed complaints; investigating and researching the facts and issues required to craft those complaints; communicating with former Calpine employees with knowledge of the claims; briefing arguments set forth in motions to dismiss; reviewing and analyzing voluminous publicly available documents, including SEC filings, FERC documents, California reports, analyst reports and media reports; briefing an appeal; drafting detailed mediation statements; and participating in bankruptcy proceedings.

Class Counsel was able to use the information gained from the litigation to participate in hard-fought, arm's-length settlement negotiations with Defendants, including a formal mediation with the assistance of an experienced mediator. The knowledge and insight gained by Class Counsel

1   following years of investigating, litigating and negotiating a settlement of the Action provided Class

2   Counsel with more than sufficient information to evaluate the strengths and weaknesses of the

3   Settlement Class' claims and Defendants' defenses.  This knowledge also guided Class Counsel to

4   the conclusion that it was unlikely that the recovery of a larger sum for the Settlement Class could be

5   obtained.  Ciolko Declaration ¶41.  Therefore, this Court should easily find that an analysis of this

6   factor supports approval of the Settlement.

### F.      The Experience and Views of Counsel Supports the Settlement

8          "Great weight is accorded to the recommendation of counsel, who are most closely

9   acquainted with the facts of the underlying litigation…Thus, 'the trial judge, absent fraud, collusion,

10  or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural*,

11  221 F.R.D. at 528 (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec.*

12  *Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding

13  counsel' belief that proposed settlement represented most beneficial result for class compelling factor

14  in its approval); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D.

15  Ariz. 1989), *aff'd sub nom., Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).

16         Lead Counsel for Named Plaintiff -- SBTK – is an extremely accomplished plaintiffs' class

17  action firm.  In addition, as set forth above, Class Counsel have become extremely knowledgeable of

18  all the circumstances at issue.  Class Counsel have vigorously prosecuted this Action against the

19  Defendants for over five years, and in light of the risks involved in further litigation, believe that the

20  Settlement is in the best interests of the Settlement Class.  Ciolko Declaration ¶37.  *See* also firm

21  biography for SBTK attached as Exhibit C to the Ciolko Declaration.  Further, where as here, the

22  settlement is the result of serious, informed and non-collusive negotiations, courts within this Circuit

23  counsel that "the trial judge . . . should be hesitant to substitute its own judgment for that of

24  counsel."  *Nat'l Rural*, 221 F.R.D. at 528 (citations omitted); *see also Kirkorian v. Borelli*, 695 F.

25  Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant

26  weight in the court's determination of the reasonableness of the settlement.").  Named Plaintiff

27  further incorporates section III.A.1.(f) of the Motion for Preliminary Approval describing in detail

28  SBTK's ERISA experience.

### G.   The Risks of Maintaining the Class Action Through Trial **Support the Settlement**

The Settlement Class as pled in this Action has only been certified for settlement purposes. But for the Settlement, Defendants would have certainly contested certification of the Settlement Class.  Although Class Counsel believe that their arguments for certifying a class in this Action are strong, they recognize that some courts raise issues that may negatively affect class certification in analogous ERISA proposed class actions.  *See e.g., Langbecker v. Elec. Data Sys.Corp.*, 476 F.3d 299 (5th Cir. 2007) (raising the issue of whether courts may properly consider facts bearing upon the affirmative defense set forth in ERISA § 404(c), suggesting possibility of individual issues).

Thus, the Settlement, which provides for certification of the settlement class, pursuant to Court approval, avoids any uncertainty with respect to this issue.

### H.   The Absence of Fraud or Collusion Supports the Settlement

The Parties engaged in arm's-length settlement negotiations prior to reaching the Settlement, including participation in two formal mediations presided over by an experienced mediator.  Ciolko Declaration ¶28.  At all times during the negotiations, Class Counsel zealously advocated Named Plaintiff's position in the best interests of the Settlement Class.  Counsel for Defendants zealously advanced Defendants' position throughout these negotiations as well.  But for the Settlement -- an agreement that Class Counsel believe to be in the best interests of the Settlement Class in light of the strengths of Named Plaintiff's claims and the risks involved in further litigation -- Class Counsel were prepared to continue prosecuting the Action against Defendants.  Ciolko Declaration ¶61.  *See In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding settlement involved neither fraud nor collusion where it was product of arm's length negotiations and hard-fought litigation by experienced counsel on both sides, and where mediation occurred with assistance of experienced mediators).

In addition, Class Counsel engaged in particularly extensive and hard fought negotiations with counsel representing the Debtors and the Individual Defendants virtually from the inception of the Bankruptcy proceedings through the conclusion of the Reorganization Plan approval process as described in section II. A. 3. above.  The Stipulation entered into by the parties in the Bankruptcy

Proceedings, which ensured the protection of the Class and enabled Class Counsel to pursue Plaintiff's appeal to the Ninth Circuit, was the product of months of negotiations resulting in an agreement that harmonized the proposed Settlement with the approved Chapter 11 Reorganization Plan.

Moreover, before the Settlement is implemented, it will be thoroughly vetted by a respected independent fiduciary, to further ensure protection for the Plan.   Therefore, Class Counsel respectfully submit that the analyses set forth above and all of the circumstances of the Settlement demonstrate that the Settlement is fair, reasonable and adequate.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

The Court has already preliminarily certified the Class for settlement purposes.  For the same reasons, Named Plaintiff respectfully submits that the Class should be certified for the Settlement.

### A.   The Proposed Class Meets the Prerequisites for Class Certification Under Rule 23(a)

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).  Further, the United States Supreme Court has recognized that the requirements for approving a settlement class are lower than those for a litigated class.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class actions created for the purposes of settlement are recognized under the general scheme of Rule 23, provided that the class is eventually determined to meet the certification requirements under Rule 23.  *Id.*

Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), any participant in or beneficiary of a plan may bring an action ***in a representative capacity on behalf of a plan***.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (emphasis added); *Rankin v. Rots*, 220 F.R.D. 511, 520 (E.D. Mich. 2004); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 543 (E.D. Mich. 2004). Generally, courts have found ERISA breach of fiduciary duty claims asserted on behalf of the plan pursuant to ERISA §§ 502(a)(2) and 409(a) to be particularly well-suited for class action status given the inherent representational nature of such claims. *See Kayes v. Pacific Lumber Co.*, 51 F.3d 1449,

1462 (9th Cir. 1995); *Ream v. Frey*, 107 F.3d 147, 151-52 (3d Cir. 1997); *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003).

Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* FED. R. CIV. P. 23.  The proposed Settlement Class is defined in the parties' Settlement Agreement as follows:

> All persons, excluding Defendants and members of their immediate families, who were participants in or beneficiaries of the Plan at any time between January 5, 2001 and November 30, 2005, and whose accounts included investments in Calpine stock or a fund created to invest in Calpine stock.

### 1.    Numerosity

The Court should determine that the proposed class "is so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  Numerosity is satisfied in classes "with fewer than 100 members, and as few as 39. . ." *In re Syncor ERISA Litig.*, 227 F.R.D. at 343, citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 & N. 10 (9th Cir. 1982); *see also,* 1 Herbert Newberg & Albert Conte, NEWBERG ON CLASS ACTIONS § 3:05 (2d ed. 1985).  Here, there are thousands of participants in the Plans during the proposed Class Period, thereby making joinder impractical.  Accordingly, Named Plaintiff submits that the proposed Settlement Class clearly satisfies the numerosity requirement of Rule 23(a)(1).

### 2.    Commonality

Named Plaintiff must demonstrate that there are questions of law or fact common to the class.  FED. R. CIV. P. 23(a)(2).  This requirement has been "construed permissively" and does not require that all questions of fact and law be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.  *Id.* Commonality is met "where the defendants have engaged in standardized conduct towards members of the proposed class."  *Colesberry v. Ruiz Food Products, Inc.*, No. 04-CV-5516, 2006 WL 1875444 at *3 (E.D. Cal. June 30, 2006), citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

1    In an analogous ERISA case, a court in this circuit found the commonality requirement was

2    satisfied where there were "questions of law and fact which are common to all prospective Class

3    members, including their possession of [company] stock and the Defendants' alleged breaches of

4    duty to the Plan." *In re Syncor ERISA Litig.*, 227 F.R.D. at 344.  The proposed Class in this action

5    easily satisfies the commonality requirement of Rule 23(a)(2) because there are multiple questions of

6    law *and* fact common to all prospective Class members in this action, including but not limited to:

7           (a)      Whether Defendants breached their fiduciary obligations to the Plan and its

8    participants by failing to loyally manage the Plan's assets when they knew or should have known

9    that Calpine securities were not a prudent investment for the Plan; and

10          (b)      Whether, as a result of Defendants' fiduciary breaches, the Plans, their participants,

11   and their beneficiaries suffered losses.

12          Under these circumstances, the commonality requirement is clearly satisfied.  *See, e.g.,*

13   *Aguilar v. Melkonian Enterprises, Inc.*, No. 05-CV-00032, 2007 WL 201180 at *3 (E.D. Cal. Jan.

14   24, 2007), (finding commonality in proposed settlement class where the named representatives and

15   class members "[a]ll allege that Defendants breached their fiduciary duties by imprudently investing

16   the assets of the plan."); *Alvidres v. Countrywide Fin. Corp.*, No. 07-CV-5810, 2008 WL 1766927 at

17   *2 (C.D. Cal. April 16, 2008) (Commonality found where "all potential Plaintiffs are members of an

18   ERISA pension plan, who have been allegedly injured by imprudent investments of the plan

19   trustees.").[7]  Accordingly, Named Plaintiff submits that he has fully satisfied Rule 23(a)(2)'s

20   prerequisite of commonality for class certification.

21

22

23          [7] *See also, In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 543-544 (E.D. Mich. 2004)
     ("Here, plaintiffs contend, the 'single overriding common issue is whether CMS stock was an
24   imprudent investment for the Plan' . . . Plaintiffs have persuaded the court that common issues, the
     resolution of which would advance the litigation, certainly exist among the proposed class.");
25   *Rankin v. Rots*, 220 F.R.D. 511, 517-18 (E.D. Mich. 2004) (finding commonality in analogous action
     alleging nearly identical common questions of law and fact); *EDS*, 224 F.R.D. 613, 622 (E.D. Tex.
26   2004); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457457, 464 (E.D. Pa. 2000); *Nelson
     v. IPALCO Enters., Inc.*, No. 02-CV-0477, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003); *In re
27   Qwest Sav.*, No 02-RB-464, 2004 U.S. Dist. LEXIS 24693 (D. Colo. Sept. 27, 2004).

28

### 3. Typicality

Named Plaintiff's claims are "typical" of the claims of all members of the proposed class, as required by Rule 23(a)(3).  Typicality exists when the class claims are founded on the same conduct or events and are based on the same legal theory.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) citing *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  *See also, In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 463 (E.D. Pa. 2000); *In re Centocor, Inc. Sec. Litig. III,* No. 98-CV-0260, 1999 U.S. Dist. LEXIS 1224 at *6 (E.D. Pa. Jan. 27, 1999) (noting that typicality requirement of Rule 23(a)(3) is satisfied where litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members).  This requirement serves to "assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 487, 508 (9th Cir. 1992).  The typicality and commonality requirements are similar in that the alleged improper conduct is a policy or practice that affects all class members.  *Armstrong*, 275 F.3d at 868.[8]

Typicality is therefore usually met in putative class actions alleging breaches of fiduciary duty under ERISA.  *See* ERISA § 409(a), 29 U.S.C. § 1109 (liability for breach of fiduciary duty is "to the plan"); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (authorizing a plan participant to sue for breach of fiduciary duty under § 409(a)).[9]

---

[8] Indeed, the Supreme Court itself has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

[9] *See also, In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005) (plan participants may properly bring a suit on behalf of an ERISA employee benefits plan where the fiduciaries' alleged breach affects the assets of the plan as a whole); *CMS*, 225 F.R.D. at 543 ("recovery for breach of a fiduciary duty goes to the Plan"); *Rankin*, 220 F.R.D. at 518-20 (finding typicality requirement met in directly analogous case); *Ikon*, 191 F.R.D. at 465 (finding typicality of claims; the named plaintiffs and the putative class would necessarily allege a similar course of conduct; that IKON and the individual defendants failed to provide accurate information in violation of ERISA obligations); *Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085, at *9 (S.D.N.Y. Mar. 22, 2001) (finding typicality of claims in analogous action where named plaintiff was ERISA plan participant during putative class period and plan's fiduciaries treated all participants alike); *Feret v. CoreStates Fin. Corp.*, No. 97-CV-6759, 1998 WL 512933, at *10-*12 (E.D. Pa. Aug. 18, 1998); *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 19786, at *7-*8; *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL 1446, 2006 WL 1662596, at *10 (S.D. Tex. June 7, 2006).

1   Named Plaintiff's claims against Defendants are by definition typical of those of the

2   proposed Class.  Each proposed Class member was a participant of the Plan during the Class Period

3   and had part of his or her individual Plan account (consisting of participant directed and/or Company

4   matching contributions) invested in the Calpine Stock Fund during that time.  Named Plaintiff, like

5   each general class member, sustained the same injury caused by Defendants' same wrongful conduct

6   in managing the Plan investments in Calpine stock during the Class Period.  Therefore, the typicality

7   requirement if Rule 23(a)(3) is easily met.

8               **4.      Adequacy**

9   A putative class representative must also demonstrate that he or she will "fairly and

10   adequately protect the interests of the class."   FED. R. CIV. P. 23(a)(4).  Adequacy is met when

11   (1) the named representatives, through qualified counsel, are able to vigorously prosecute the case,

12   and (2) the named representatives' interests are not antagonistic or in conflict with the absent class

13   members.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Named

14   Plaintiff clearly satisfies the adequacy requirement because there are no conflicts of interest between

15   the named Plaintiff and the Class as a whole, and the attorneys prosecuting this case are experienced

16   and exceptionally qualified to litigate this matter.

17   First, Named Plaintiff's interests do not conflict with the interests of the absent Class

18   Members.  To the contrary, Named Plaintiff, like the putative Class members, was a Plan participant

19   during the Class Period and Named Plaintiff seeks Plan-wide relief for identical alleged breaches of

20   fiduciary duty by Defendants.  Moreover, as detailed above, Named Plaintiff, with the assistance of

21   Class Counsel has vigorously and relentlessly prosecuted this litigation in multiple forums in an

22   effort to obtain a recovery for the putative Settlement Class.  Named Plaintiff's interests are

23   completely unified with those of the class because Named Plaintiff must prove the same wrongdoing

24   by Defendants as the absent Class members to establish Defendants' liability.

25   Second, Named Plaintiff has retained qualified, experienced attorneys with broad-based,

26   multi-jurisdictional experience in complex class action litigation, especially in the context of breach

27   of fiduciary duty cases under ERISA.  SBTK as Lead Class Counsel, has vigorously prosecuted this

28   action on behalf of the named Plaintiff and the Class as a whole to obtain the best possible recovery

for the Plan.  Moreover, Named Plaintiff James Phelps has fulfilled the duties required of class representative by continuing to prosecute this action in the face of significant procedural hurdles. Both Named Plaintiff and Class Counsel have, and will continue to adequately represent and protect the interest of the absent Class members.

In short, the requirements of Rule 23(a)(4) are met.  The following holding is instructive here:

> [B]ecause the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class, I find that the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy representation requirement.  In particular, I note that the right to relief of the named plaintiffs, like that of the absent class members, depends on demonstrating that the defendants violated the terms of the plans, violated provisions of ERISA, and breached their fiduciary duties.  Second, because the named plaintiffs' attorneys have extensive experience litigating class actions and ERISA actions . . . the named plaintiffs' attorneys appear qualified to prosecute the action on behalf of the class.  Therefore, the court concludes that plaintiffs have satisfied the requirement of Rule 23(a)(4) that they will adequately represent the class.

*Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001).

## B.    The Class May be Properly Certified under Rule 23(b)(1) and/or (b)(2)

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three alternative requirements of Rule 23(b).  FED. R. CIV. P. 23(b).  While only one of the conditions of Rule 23(b) must be satisfied to merit class certification, if the class meets more than one of the alternatives, the court may certify the action under each section satisfied.  *See, e.g.*, *Babcock v. Computer Assocs. Int'l.,* 212 F.R.D. 126, 133 (E.D.N.Y. 2003) (granting class certification under subsections 23(b)(1), (b)(2) and (b)(3) for breach of fiduciary duty claims).

### 1.    Certification under Rule 23(b)(1) is Proper

Under Rule 23(b)(1), a class may be certified if:

> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B)  adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Ikon*, 191 F.R.D. at 466.  ERISA actions are frequently certified under Rule 23(b)(1) as its provisions are particularly well-suited to the statute's requirement of bringing a breach of fiduciary duty action as a representative vehicle on behalf of a plan.  As one court recently explained:

> As noted, this is an action for breach of fiduciary duty brought under § 1132(a)(2) on behalf of the Plan.  Because the allegations in the Complaint implicate misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of "varying adjudications."  Similarly, allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create "incompatible standards of conduct" for the Defendants.  These are precisely the problems Rule 23(b)(1) was intended to avoid.

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).  *See also, Smith v. AON Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) ("Claims in which plan participants or beneficiaries seek to recover on behalf of the plan itself are 'particularly well-suited for Rule 23(b)(1) certification by virtue of the substantive law of ERISA'") (citing *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 424 (N.D. Okla. 2005)).

### 2.  Subsection (b)(1)(B)

Subsection (b)(1)(B) centers on the rights of the absent class members.  *McDonnell-Douglas Corp. v. United States Dist. Ct.*, 523 F.2d 1083, 1086 (9th Cir. 1975).  Many courts have relied on this provision in certifying classes in similar cases, and it is notably appropriate for allegations of a breach of defendants' fiduciary obligations to plaintiffs.  As stated in the Advisory Committee Notes accompanying the 1966 amendments to Rule 23:

> This [(b)(1)(B)] clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding[ ] the other members, might do so as a practical matter. . . . *[This] reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.*

Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (emphasis added); *see also, Syncor*, 227 F.R.D. at 346.   Indeed, a number of courts have accepted this reasoning in certifying classes in ERISA cases alleging a breach of defendants' fiduciary obligations. As one court explained:

> Under 29 U.S.C. § 1132(a)(2), participants or beneficiaries of an ERISA plan have standing to sue for appropriate relief under 29 U.S.C. § 1109 (1988), imposing liability for breaches of fiduciary duty.   An action to enforce fiduciary duties is "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).   Any relief granted by a court to remedy a breach of fiduciary duty "inures to the benefit of the plan as a whole" rather than to the individual plaintiffs. *Id*. at 140.   "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D. Ga. 1991).   Since Counts X and XI are brought by [plaintiffs] in their representative capacity, the Court finds that class certification for these claims is proper under Rule 23(b)(1)(B).

*Kane v. United Indep. Union Welfare Fund*, No. 97-CV-1505, 1998 WL 78985 at \*9 (E.D. Pa. Feb. 24, 1998).  *See also, Syncor*, 227 F.R.D. at 346-347 ("If the primary relief is to the Plan as a whole, then adjudications with respect to individual members of the class would 'as a practical matter' alter the interests of other members of the class – if one plaintiff forces the Defendants to pay damages to the Plan, the benefit would affect everyone who has a right to disbursements from the Plan); *Colesberry v. Ruiz Food Products*, No. 04-CV-5516, 2006 WL 1875444, at \*4 (E.D. Cal. June 30, 2006) (Court certified the proposed settlement class under Rule 23(b)(1)(B), where adjudication of plaintiffs' claims on behalf of the plan could affect or impair the ability of unnamed class members to protect their interests); *Aguilar v. Melkonian Enterprises, Inc.*, No. 1:05-CV-00032, 2007 WL 201180, at \*4 (E.D. Cal. Nov. 3, 2006) (Court certified proposed settlement class under Rule 23(b)(1)(B) where "determination in one case that Defendants breached their fiduciary duty to the Plan beneficiaries would be dispositive of other cases."); *Rogers v. Baxter*, No. 04-CV-6476, 2006 WL 794734, at \*9 (N.D. Ill. Mar. 22, 2006) ("[A]ctions under ERISA section 502(a)(2) are entirely different [from mass tort suits], since such suits are representative by their very nature and the claim of any plan participant will necessarily dispose of other participants' claims, irrespective of whether or not a class is formally certified"); *In re WorldCom Inc. ERISA Litig.*, No. 02-CV-4816,

2004 U.S. Dist. LEXIS 19786, at *8 (S.D.N.Y. Oct. 4, 2004) (certifying class under Rule 23(b)(1)(B) because "any adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class"). Because of ERISA's distinctive "representative capacity" and remedial provisions, this action is a paradigmatic case for class treatment under Rule 23(b)(1)(B). *See Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003).

### 3.     Subsection (b)(1)(A)

After determining that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, some courts deem it unnecessary to reach the other potentially-applicable subsections of Rule 23(b). *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085, at *15 n.2 (S.D.N.Y. Mar. 22, 2001); *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993).

However, other courts certify similar ERISA class actions under both subsections (b)(1)(B) and (b)(1)(A). *See, e.g.*, *Rankin*, 220 F.R.D. at 522; *Kolar v. Rite Aid Corp.*, No. 01-CV-1209, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 1003) (finding that "a (b)(1) class is a perfect vehicle for resolving complex ERISA issues such as these involved here."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL 1446, 2006 WL 1662596, at *15 (S.D. Tex. June 7, 2006) (slip op.) (certification under Rule 23(b)(1)(A) is also appropriate, where "plan participants can only seek relief on behalf of the plan for breach of fiduciary duty" and "if successful [the] action will impose obligations on defendants that are applicable to the plans, and thus on all participants and beneficiaries. . . .").

Again, the nature of the case, which challenges Defendants' Plan-wide conduct, makes this result particularly appropriate. As the court in *Alvidres v. Countrywide Fin. Corp.*, No. 07-CV-5810, 2008 WL 1766927, at *3 (C.D. Cal. April 16, 2008), noted with regard to certification under (b)(1)(A), where the putative class numbered in the thousands, "[t]his would create a risk of 'inconsistent and varying' adjudications, resulting in 'incompatible standards of conduct' for Defendants. . . . ."; *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 847 (N.D. Cal. 2005); *see also Ikon*, 191 F.R.D. at 461 (finding that "[t]here is also risk of inconsistent dispositions

that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material and would create difficulties in implementing such decisions.").  "A failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions," *Rankin*, 220 F.R.D. at 523, making certification here appropriate under subsection (b)(1)(A), as well as (b)(1)(B).  *See also, Furstenau v. AT&T*, No. 02-CV-5409, 2004 U.S. Dist. LEXIS 27042, at *13-14 (D.N.J. Sept. 2, 2004) (certifying ERISA company stock case as FED. R. CIV. P. 23(b)(1) class because "[p]laintiff seeks plan-wide relief, where success necessarily results in plan-wide relief and failure to prove breach of fiduciary duty would necessarily preclude actions by other plan participants.  If this Court did not certify the class, then defendants would be exposed to multiple lawsuits and risk inconsistent decisions."); *Aguilar*, 2007 WL 201180, at *4 (certification appropriate under 23(b)(1)(A) where Defendants' alleged misconduct applied to the Plans as a whole and independent actions would create the risk of inconsistent results.)  Therefore, if necessary, it is clear that the proposed Class could be certified under Rule 23(b)(1)(A).

### 4. Alternatively, the Proposed Class Meets the Requirements of Rule 23(b)(2)

Although the class is most appropriately certified under Rule 23(b)(1), it may also be certified pursuant to Rule 23(b)(2).  Under Rule 23(b)(2), a class may be certified if:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED. R. CIV. P. 23(b)(2).  Courts have recognized that certification is appropriate under Rule 23(b)(2) where declaratory or injunctive relief is an important aspect of the overall relief sought.  *See, e.g., Church v. Consolidated Freightways, Inc.*, No. 89-CV-7468, 1991 U.S. Dist. LEXIS 1549, *42-*43 (N.D. Cal. June 14, 1991); *Risinger v. Concannon,* 201 F.R.D. 16, 23 (D. Me. July 2, 2001); *Gelb v. American Tel &. Tel. Co.*, 150 F.R.D. 76, 78 (S.D.N.Y. 1993); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1045-46 (N.D. Miss. 1993).

The proposed Class clearly satisfies the requirements of Rule 23(b)(2).  As noted repeatedly *supra*, Defendants' conduct (and the relief sought from the effects of it) in an ERISA breach of

1   fiduciary duty case must apply to the Plan, and therefore to the class of plan participants, as a whole.

2   *See generally, Russell*, 473 U.S. at 141.  As is unarguably clear from the text of the Complaint,

3   Named Plaintiff has asked for numerous forms of injunctive and declaratory relief.   *See, e.g.*,

4   Complaint, Prayer for Relief A, B, & E.

5          If Named Plaintiff proves his allegations in the Complaint that Defendants harmed the

6   proposed Class of the Plan participants by their breaches of fiduciary duties, Defendants will be

7   obliged to make the *Plan* whole, and take whatever equitable actions are ordered by the Court,

8   including that declaratory and equitable relief specifically sought by Named Plaintiff. *See* ERISA

9   § 409(a), 29 U.S.C. § 1109(a); ERISA §§ 502(a)(2)-(3), 29 U.S.C. §§ 1132(a)(2)-(3); *see also*

10   Complaint, "Prayer for Relief."; *See In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844,

11   847-48 (N.D. Cal. 2005) (Settlement class certified pursuant to Rule 23(b)(2) where "Defendants

12   have allegedly acted or refused to act on grounds generally applicable to the class, thereby justifying

13   equitable and/or declaratory relief for the class as a whole. . . .").  Benefits to the individual proposed

14   Class members/Plan participants, by way of a refurbished and lawfully run retirement plan, "would

15   flow directly and incidentally" from the relief sought by the Named Plaintiff. *Bublitz v. E.I. du Pont*

16   *de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (certifying Rule 23(b)(2) class in ERISA

17   breach of fiduciary duty action and noting monetary relief granted flowed directly from declaratory

18   relief sought by plaintiffs); *see also Rankin*, 220 F.R.D. at 520 ("Rankin, however, is also suing on

19   behalf of the Plan for breach of fiduciary duty.  If successful, as stated above, damages will

20   presumably flow to the Plan and in turn, to class members, including Rankin.")

21          Therefore, given the above, Named Plaintiff's ERISA claims may also be certified as a Class

22   under Rule 23(b)(2).

23   **C.      Appointment of Class Counsel**

24           FED. R. CIV. P. 23(g) states that "[u]nless a statute provides otherwise, a court that certifies a

25   class must appoint class counsel.  An attorney appointed to serve as class counsel must fairly and

26   adequately represent the interests of the class." *Santos v. Comancho*, 2007 WL 81868, at * 6 (D.

27   Guam Jan 9, 2007), quoting, FED. R. CIV. P. 23(g)(1)(A) and (B). In making this determination,

28   courts must evaluate the following:

MOTION FOR FINAL APPROVAL                                                                                29
No. C 03-cv-1685 (SBA)

[T]he work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation and claims of the type asserted in the litigations, counsel's knowledge in the applicable law, and the resources counsel will commit to representing the class.

*Id.* quoting FED. R. CIV. P. 23(g)(1)(C).

As detailed above, Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") has performed extensive research and investigation in filing and litigating the instant claims. SBTK has tirelessly prosecuted this litigation before this Court, the Ninth Circuit Court of Appeals, and U.S. Bankruptcy Court for the Southern District of New York, devoting considerable time and resources to these proceedings to protect the rights of Named Plaintiff and the putative class. As indicated above and in Exhibit C attached to the Ciolko Declaration, SBTK is well versed in complex class action litigation in general and ERISA breach of fiduciary duty claims in particular. SBTK has dedicated ample resources to vigorously and aggressively prosecution of this matter to protect the interests of Named Plaintiff and the putative class members. Accordingly, Named Plaintiff respectfully requests that SBTK be appointed Lead Counsel for the Class.

## VI.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Upon approval of the Settlement and entry of an order approving distribution, the Settlement Fund, less payment of certain Court-approved fees and expenses, including Settlement Administrative Costs (the "Net Settlement Fund Proceeds"), shall be distributed to the Settlement Class Members. The Plan of Allocation, which was filed as Exhibit 3 to the Settlement Agreement, provides for distribution of the Net Settlement Fund Proceeds to each Settlement Class Member, in accordance with a formula set out in the Plan of Allocation.

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole – the plan must be fair, reasonable and adequate. *Class Plaintiffs*, 955 F.2d at 1284. An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. Heritage Bond, 2005 U.S. Dist. LEXIS 13555, at *38. Named Plaintiff respectfully submits that his Plan of Allocation is reasonable and adequate.

1    In sum, the Plan of Allocation provides that each Class Member's Net Loss will be calculated

2    by adding the  dollar value, if any, of the  balance invested in the Company Stock Fund on the first

3    day of the  Class Period to the dollar  value, if any, of all purchases of shares of the Company Stock

4    Fund during the Class Period as of the time of purchase(s) and then subtracting the dollar value, if

5    any, of all sales of shares of the Company Stock Fund during the  Class Period as of the time  of the

6    sale(s) and the dollar value, if any, of the balance invested in the Company Stock Fund on the last

7    day of the Class Period.  The results are then totaled to yield the total Net Loss to the Plan over the

8    Class Period.  Then, the Claims Administrator will divide each Settlement Class Member's Net Loss

9    by the total Plan loss to determine his or her Preliminary Fractional Share of the Plan's losses.  The

10   Claims Administrator then will multiply each Preliminary Fractional Share by the Net Settlement

11   Fund Proceeds by the  Net Settlement Proceeds in order  to determine each  Class Member's

12   Preliminary Dollar Recovery.  After allocating a minimum of ten dollars to each Settlement Class

13   Member whose Preliminary Dollar Recovery is greater than zero but less than ten dollars, the Claims

14   Administrator will recalculate the Preliminary Fractional Shares and Preliminary Dollar Recoveries

15   as many times as necessary so as to arrive at the Final Fractional Share and the Final Dollar

16   Recovery for each Settlement Class Member.  The sum of the Final Dollar Recoveries must equal

17   the Net Settlement Proceeds.

18   The Plan of Allocation also provides for the timely distribution of the Net Settlement

19   Proceeds and makes arrangements for participants who now longer maintain accounts in the Plan to

20   receive their distribution in accounts newly created for this purpose, so that all Settlement Class

21   Members may take advantage of the applicable tax laws.  The Plan of Allocation is virtually

22   identical to plans of allocation used, with court approval, in numerous cases involving recoveries  on

23   behalf of ERISA plans.  See Ciolko Declaration¶52.

24   Moreover, the Plan was fully disclosed in the Notice that was sent to 2,662 potential

25   Settlement Class Members, and as of the filing of this Memorandum, not a single Settlement Class

26   Member has filed an objection to the Plan.  Ciolko Declaration ¶53.  For the foregoing reasons, Class

27   Counsel believe that this method of allocation is fair, reasonable and adequate and respectfully

28   submit that the Plan should be approved.

MOTION FOR FINAL APPROVAL                                                                                      31
No. C 03-cv-1685 (SBA)

# VII.    CONCLUSION

For the foregoing reasons, Named Plaintiff and Class Counsel respectfully submit that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and respectfully request this Court to grant final approval of the Settlement and Plan of Allocation, and to certify the Settlement Class for settlement purposes.

DATED:  October 10, 2008                    GREEN WELLING LLP


By:_____/s/_____
              Robert S. Green

595 Market Street, Suite 2750
San Francisco, CA 94105
Tel:  (415) 477-6700
Fax:  (415) 477-6710

*Liaison Counsel for Plaintiffs*

Joseph H. Meltzer
Edward W. Ciolko
Mark K. Gyandoh
SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP
280 King of Prussia Road
Radnor, PA  19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

Lead Counsel for Plaintiff